UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TUJUANA M. MCGAHEE-LITTLE,
o/b/o E.L., a minor,

                Plaintiff,        Civil Action No. 13-14124
                                     Honorable Lawrence P. Zatkoff
                                     Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 9]

Tujuana McGahee-Little brings this action on behalf of her minor son, E.L. ("Plaintiff"),[1] pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [8, 9], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [9] be GRANTED, Plaintiff's Motion for Summary Judgment [8] be DENIED, and

---

[1] For convenience, the Court will refer to E.L., the minor child, as "Plaintiff" throughout this brief, although his mother, Tujuana McGahee-Little, is the named plaintiff in this action.

that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On July 12, 2011, an application for SSI was filed on Plaintiff's behalf, alleging a disability onset date of February 5, 2002. (Tr. 134-40). This application was denied initially on October 25, 2011. (Tr. 86-89).[2] A timely request for an administrative hearing was filed on Plaintiff's behalf, and a hearing was held on June 5, 2012, before ALJ Joanne Adamcyzk. (Tr. 36-60). Both Plaintiff and his mother appeared and testified at the hearing, represented by attorney Marvin Jennings. (*Id.*). On July 6, 2012, the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 17-35). On July 29, 2013, the Appeals Council denied review. (Tr. 1-7). On behalf of Plaintiff, Ms. McGahee-Little timely filed for judicial review of the final decision on April 12, 2013. [1].

### B.     Framework for Child Disability Determinations

A child under age eighteen is considered "disabled" within the meaning of the Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i). The Social Security regulations set forth a sequential three-step process for determining a child's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20

---

[2] Plaintiff had filed two prior SSI applications, on July 23, 2009 and December 9, 2010. (Tr. 61-69; 78-85) Both applications were denied at the initial stage on March 11, 2010 and February 15, 2011, respectively. (*Id.*). In neither case did Plaintiff request a hearing. The ALJ in the instant case found that neither application was reopened with this application. (Tr. 20).

C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. §416.924(a).

To "meet" a listed impairment, a child must demonstrate both the "A" and "B" criteria of the impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder" whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* Further, to be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment does not "meet" a listed impairment, the impairment may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. §416.926a. "Medical equivalency is covered by 20 C.F.R. §416.926; functional equivalency is covered by Section 416.926a." *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003).

"To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. §416.926(a)). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or

3

> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Evans ex rel. DCB v. Comm'r of Soc. Sec.*, 2012 WL 3112415, at *6 (E.D. Mich. Mar. 21, 2012) (quoting *Koepp v. Astrue*, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011)); *see also* 20 C.F.R. §416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability. If a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Evans*, 2012 WL 3112415, at *7 (quoting *Emeonye v. Astrue*, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008)).

Regarding functional equivalence, there are six "domains" that an ALJ considers: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *See* 20 C.F.R. §416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one of the six domains or "marked" limitations in two of the six. *See* 20 C.F.R. §416.926a(d). An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(3)(i). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. §416.926a(e)(2)(i).

    **C.**    **Evidence of Record**

        *1.*    *Disability Reports and Other Records*

Plaintiff was born on February 5, 2002, making him nine years old at the time of his

application. (Tr. 205). He was in the fourth grade, attending school, and not enrolled in any special education or speech/language therapy program. (Tr. 212). Plaintiff's mother reported that Plaintiff's disabling conditions were asthma and a hearing impairment. (Tr. 209). She reported that these conditions had disabled him since birth. (*Id.*). Plaintiff was reported to be taking several medications for allergies and asthma, with no noted side effects. (Tr. 210). He had also undergone a hearing test at a hospital. (Tr. 211). He was reported to have hearing problems and pain that stemmed from fluid in his ears. (Tr. 215). His mother reported that his teachers have noted his inability to hear them at times. (*Id.*). He misses 3-4 days of school a month due to the fluid or his asthma. (Tr. 216). He is also "sometimes" restricted from gym class or playing outside when it is hot due to his asthma. (*Id.*). His mother reported that his daily activities include self-care, light cooking, household chores, reading books "all day long," watching movies, playing games, and two hours of homework. (Tr. 215-17). She described him as "very talkative" and noted that he gets along well with adults. (Tr. 215). At an interview with an agency representative, Plaintiff was noted as being "bright and attentive. Seemed to understand conversational speech without difficulty." (Tr. 207).

      2.     *The Administrative Hearing*

Plaintiff testified at the hearing that he attends school and has a number of friends. (Tr. 41). He gets along with his teachers and gets good grades. (Tr. 40-41). He gets along with his siblings at home and enjoys reading, playing video games, playing with his dogs and watching television. (Tr. 42-43). He also rides his bike and performs chores. (Tr. 43-44). He testified that he experiences no problems with his hearing or his asthma, although he noted being absent from school on several occasions and several visits to the doctor for both conditions. (Tr. 44-49). He testified that he sometimes has ear pain, and sometimes experiences a beeping noise in

his ear. (Tr. 44-48). His left ear is worse than his right. (Tr. 46-47). His mother testified that he had missed a month of school due to both conditions, and that he had been in the emergency room at least five times over the last year for his asthma and ear infections. (Tr. 50; 52-53).[3] She testified that he constantly needs his rescue inhaler, and that he has no hearing in his left ear and only partial hearing in his right. (Tr. 50-51). She noted that she has to inform his teachers that his hearing makes it difficult for him to respond to their questions. (Tr. 52). Although he is not restricted from gym or sports, his mother testified that he does not currently play sports pending an updated asthma action plan his doctor is developing. (Tr. 51-52).

### 3. *Medical Evidence*

In May 2007, Plaintiff underwent a hearing evaluation that determined his hearing was within normal limits. (Tr. 233). In late 2008, Plaintiff failed a routine hearing screening at his school and a letter went home to his parents directing them to schedule a hearing evaluation to determine whether Plaintiff had a hearing problem. (Tr. 231-32). In April 2009, Plaintiff underwent a hearing test as part of a routine visit that appeared to generate normal results. (Tr. 257). In May 2009, after a primary care physician follow-up for an emergency room visit, Plaintiff was referred to an ear, nose and throat specialist with a complaint of recurrent middle ear infections. (Tr. 243; 259). It was noted he had had tubes inserted in the past, as well as a tonsillectomy and adenoidectomy. (*Id.*). Upon exam, his ears were clear and his hearing was grossly intact. (Tr. 244). The doctor determined that Plaintiff "would benefit from bilateral myringotomy with tubes and adenoidectomy." (Tr. 245). The procedure was completed two weeks later. (Tr. 234-36). At follow-up appointments, Plaintiff was noted to be doing well, with improved hearing. (Tr. 249-53).

---

[3] Later during the hearing, however, it was determined that Plaintiff had made "five visits [to the emergency room] in a period of a little more than two years." (Tr. 56).

6

Plaintiff went to the emergency room in September 2009 for an upper respiratory infection and bronchitis. (Tr. 266-70). A consultative examination in December 2009 found no hearing deficits, that his asthma was under control, and included self-reports that Plaintiff's hearing had returned to normal after his last surgery. (Tr. 276-78). A psychological evaluation in January 2010 noted that Plaintiff was sometimes distracted from the interview by noises, and that his speech was fluent. (Tr. 281-83).

Plaintiff was seen by his primary care physicians on five occasions in 2011 for acute exacerbation of his asthma. (Tr. 304-306; 311-12; 329-38). At each visit he was noted to have scattered rhonchi and wheezing, but good air intake. (*Id.*). On some of those occasions his ears were also infected, while on others they were not. (*Id.*). Sometimes he was advised to continue his current asthma plan, but on most occasions the doctor prescribed an oral steroid. (*Id.*). He was also seen in the emergency room once during this period. (Tr. 297-302). He was in the emergency room once more in January 2012. (Tr. 345-46). Both times he was prescribed antibiotics and discharged. (Tr. 297-302; 345-46). In March 2011, a tube was removed from his left ear, and his right ear was found to be normal. (Tr. 326). The doctor ordered a hearing test, which was conducted and showed that both his right and left hear could consistently hear all frequencies at less than 10 decibels and his speech recognition threshold was 5 decibels in his right ear and 0 in his left. (Tr. 327). In June and November 2011, Plaintiff was again referred to the same specialist, who ultimately recommended tube insertion, a procedure carried out in February 2012. (Tr. 305; 344; 347-69). At his December 2011 appointment, Plaintiff's ears were found to be normal, despite Plaintiff's subjective claims of mild hearing problems and talking louder, and he was sent home to come back if the symptoms flared again. (Tr. 344).

7

On October 6, 2011, Plaintiff underwent a consultative examination with Dr. R. Scott Lazzara. (Tr. 317-21). Dr. Lazzara concluded that Plaintiff's asthma was stable, and that despite continued problems with allergic rhinitis with hearing loss, he was able to hear normal volume at the examination. (Tr. 321). Dr. Lazzara noted that Plaintiff "may develop progressive hearing loss over time" and that his "degree of impairment appears mild to moderate but not declining." (*Id.*).

### D.     The ALJ's Findings

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 5, 2011, the application date. (Tr. 23). At Step Two, the ALJ found that Plaintiff has the following severe impairments: asthma and a hearing impairment. (*Id.*). At Step Three, the ALJ concluded that these impairments do not meet or medically equal a listed impairment. (*Id.*). The ALJ also found that Plaintiff's impairments do not functionally equal any listing because he had less than marked limitations in the areas of moving about and manipulating objects and health and physical well-being, and no limitations in any other domain. (Tr. 25-30). Accordingly, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 30).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not

remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001); *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286

9

(6th Cir. 1994) (internal citations omitted).

### F. Analysis

In his motion for summary judgment, Plaintiff does not actually argue that his impairments meet, medically equal, or functionally equal any listing. Nor does Plaintiff challenge the ALJ's findings as to his limitations in any of the six functional domains. Rather, Plaintiff simply argues that the ALJ committed error by failing to evaluate all of the medical records. However, Plaintiff fails to point to any specific medical record the ALJ failed to properly consider. Nor does Plaintiff actually tie any of the medical records he cites to an argument that the consideration of that record would have influenced the ALJ's conclusions about functional ability. For these reasons, the Court could find that Plaintiff has waived all of his potential arguments. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted).

However, even considering Plaintiff's "arguments" and the entire record, the Court finds no error in the ALJ's analysis. The ALJ noted that despite Plaintiff's claims of disability due to asthma and hearing loss, he does well in school, gets good grades, "and generally functions normally." (Tr. 25). Indeed, the evidence of record demonstrates that despite frequent trips to the doctor for asthma attacks, and several surgeries to place tubes in his ears, Plaintiff's life has not been significantly disrupted by his conditions, as his own testimony shows that he does well in school, has many friends, gets along with his family, plays inside and outside at home, and is generally well-liked. Plaintiff himself testified to absolutely no limitations that were the result of his conditions. As discussed above, on multiple occasions, medical professionals noted Plaintiff to be hearing within normal limits. (*E.g.*, Tr. 244, 257, 249-53, 321, 327, 344).

The ALJ noted only two domains in which Plaintiff exhibited any limitations, finding that

Plaintiff had "less than marked limitation" in moving about and manipulating objects and in health and physical well-being. (Tr. 28-29).[4] Both findings are supported by substantial evidence.

Regarding Plaintiff's less-than-marked limitation in moving about and manipulating objects, the ALJ noted that although Plaintiff's doctor has indicated that he should not overly exert himself due to asthma, the ALJ also noted Plaintiff's testimony that he does not generally get short of breath unless he exerts himself for a long period. (Tr. 28-29). Consistent with the ALJ's finding, Plaintiff testified that his asthma does not cause him any problems, and that he does not have difficulty breathing when running, (Tr. 44), though he later testified that gym class or activity might cause him to experience wheezing and coughing. (Tr. 47). Taken together, the evidence supports the ALJ's conclusion of less than marked limitations in this domain. Plaintiff offers no evidence or argument to the contrary.

Regarding Plaintiff's less-than-marked limitation in health and physical well-being, the ALJ appropriately considered the record evidence. She found that Plaintiff's "history of asthma and fluid on the ears," have been adequately addressed through use of an inhaler and surgery (placement of tubes in Plaintiff's ears). Again, the record makes clear that Plaintiff's life has not been significantly disrupted by his conditions; he does well in school, has many friends, gets along with his family, plays inside and outside at home, and is generally well-liked. As discussed above, on multiple occasions, medical professionals noted Plaintiff to be hearing within normal limits. (*E.g.*, Tr. 244, 257, 249-53, 321, 327, 344). The ALJ also noted that Plaintiff's breathing and hearing were both fine at the hearing. (Tr. 30). Finally, the ALJ appropriately credited Dr. Lazzara's findings that Plaintiff's asthma was stable, that he was able

---

[4] The ALJ specifically found that Plaintiff had "no limitation" in any of the other domains.

11

to hear normal volume at the examination, and that his "degree of impairment appears mild to moderate but not declining) as those findings are consistent with the rest of the record evidence discussed herein. (Tr. 30). In sum, the ALJ's conclusion that Plaintiff is not disabled is supported by substantial evidence in the record.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **[9]** be **GRANTED**, Plaintiff's Motion for Summary Judgment **[8]** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: September 15, 2014　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 15, 2014.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager